Filed 5/1/26  McGuire v. Mason CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHARLESTON MCGUIRE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JIMMY MASON, Administrator of the Estate of Carolyn McGuire, <br><br> Defendant and Appellant. <br><br> ——————————————————— <br><br> MICHAEL PECHERER, Partition Referee, Real Party in Interest <br><br> Respondent, | A174383 <br><br> (Alameda County <br> Super. Ct. No. RG16838858) |

This appeal concerns a partition action involving four residential properties located in Oakland (the "Properties"), in which Charleston McGuire ("Charleston"), his sister Carolyn McGuire ("Carolyn"),[1] and their siblings owned fractional interests.  Charleston initiated this action against

---

[1]  We refer to Charleston McGuire and Carolyn McGuire by their first names for brevity and to avoid confusion.  No disrespect is intended.

Carolyn and the others, but when Carolyn died she was replaced in the lawsuit by Jimmy Mason, her husband and the administrator of her estate. Michael Pecherer, real party in interest in this action, served as the partition referee for the Properties (the "Partition Referee").

In July 2025, the Partition Referee moved to abate a petition filed by Mason in Carolyn's probate proceeding on the ground it presented the potential for probate court orders that conflict with those of the partition court and undermine the integrity of the partition proceedings. The motion was granted, and Mason appeals the order of abatement.

We dismiss the appeal as having been taken from a nonappealable order.

### FACTUAL AND PROCEDURAL BACKGROUND

Charleston's parents purchased the Properties in the 1970s. Charleston's mother survived his father and after her death in 1984, Charleston and his eight siblings (including Carolyn) each received a one-ninth interest in the Properties. Charleston thereafter managed the Properties for more than 30 years.

In November 2016, Charleston filed an action to partition the Properties because of increasing dissension within the family, insufficient revenue from the Properties to support their proper maintenance, and Charleston's inability to continue managing them. At that time, Carolyn and her family were living rent-free on one of the four Properties (the "Peralta property").

After the partition action was filed, Carolyn's attorney demanded she receive the Peralta property as her share of the Properties despite the fact she was entitled to only a one-ninth interest in that property. Carolyn also filed an answer and cross-complaint seeking an accounting for the rents and

2

profits Charleston received from the Properties since he began managing them around 1986.[2]

The following year, Charleston moved for summary judgment on the cross-complaint. In September 2018, the partition court[3] denied Charleston's motion and further noted the judicial officer handling settlement discussions in the matter indicated the parties had agreed to an accounting of the income and expenses related to the Properties. The partition court therefore ordered that an accounting be completed before the date of the next mandatory settlement conference. This accounting never occurred.

In November 2021, while the partition action was still pending, Carolyn passed away. A year later, the parties stipulated that Mason (Carolyn's husband and the administrator of her estate) be substituted in her place as a defendant in the partition action.

In October and November 2022, the partition court held a trial on the partition claim. At its conclusion, the court authorized the sale and partition of the Properties. While expressing its belief there was a right to an accounting as Carolyn's cross-complaint had sought, the court denied the claim on the ground the issue should have been litigated and decided before the end of trial.

In January 2023, the partition court entered an interlocutory judgment setting forth and explaining its partition orders (the "January 2023 Interlocutory Judgment"). Though finding Charleston and his eight siblings

---

[2]     Carolyn was the only sibling who appeared in the partition action. Most of the remaining defendants, which consisted of the living siblings and the heirs of deceased siblings, defaulted.

[3]     Since this appeal arises out of an abatement order and there are later references to the probate court in which the abated proceeding was filed, we refer to the court handling the partition proceeding as the "partition court."

were the original tenants in common with equal interests in the Properties, the court observed the deaths of certain of the siblings led to their "descendants in interest" becoming "co-tenants to the extent their interests may appear, either by testate or intestate succession or otherwise." The court ordered that the Properties be sold and that a list of proposed partition referees be submitted to the court. The order also set forth the procedure for the sale of the Properties. After the sale and determination of any reimbursement of expenses or fees to the partition referee or counsel, the court would order a partial or final distribution of the sale proceeds upon a party's motion or its own motion. Mason did not appeal this judgment.

Following the entry of the January 2023 Interlocutory Judgment, the Partition Referee was appointed from a submitted list. The referee then began the process of selling the Properties but was stymied by various title issues, including the fact that the recorded titles did not reflect the legal and equitable ownership of the Properties. More particularly, the referee noted that ownership of the Properties was fractionated among 21 family members due to the deaths of five of Charleston's siblings whose names were on the title but whose intestate estates had not been probated.[4] Those who had an ownership interest in the Properties included the four surviving siblings, 16 children between the five deceased siblings who had equitable interests in the Properties by intestate succession, and Mason as Carolyn's husband who also had an equitable interest by intestate succession.

As these title issues needed to be resolved as a precondition to title insurance, the Partition Referee filed a motion in July 2023 for orders quieting title in each of the four Properties. The motion set out the precise

---

[4]     Probate proceedings had commenced but not concluded for two of the deceased siblings.

4

fractional interests of each of the siblings and their heirs. Relative to Carolyn, the motion noted her estate was subject to an open probate proceeding and would ultimately be distributed by intestate succession. The motion proposed distributing her estate's share of the proceeds to Mason as the administrator if the probate remained open when the Properties were sold, or to Carolyn's beneficiaries if probate had closed by the time of the sale.

In August 2023, the partition court issued orders quieting title to each of the four Properties ("2023 Quiet Title Orders"). These orders listed the precise fractional interests of each of the owners of the Properties. Relative to Carolyn's family, the orders stated that Mason, as Carolyn's "surviving husband," had a 4/108th interest in the Properties, while each of Carolyn's four sons had a 2/108th interest. The orders did not include any reference to any interest that Carolyn's estate may have had in the Properties; instead, it only acknowledged the individual ownership interests of Mason and Carolyn's children. Mason did not appeal these orders.

Nonetheless, in July 2024, Mason filed a "Memorandum re: Entitlement of Administrator to Decedent's Share" in the partition proceeding. The memorandum claimed Carolyn had an undivided one-ninth interest in the Properties and appeared to demand that her share of the sale proceeds be paid to Mason as the administrator of her estate.

The following month, the Partition Referee filed a motion for various orders to conclude the partition action, including an order confirming the sale of the Properties, an order authorizing the referee to sign on behalf of the sellers, and an order for the distribution of the sale proceeds. The motion additionally requested that the court equitably reallocate some of the costs of partition—namely, $10,000 of Charleston's attorney fees and $10,000 of the referee's fees—to Mason as the administrator of Carolyn's estate due to

5

Mason and Carolyn's delay and obstructionist tactics during the partition action.

In support of his motion, the Partition Referee filed a declaration explaining that after the partition action was filed, Carolyn and Mason's attorney demanded that Carolyn be given the Peralta property—which she and her family had been living in rent-free since 2011—even though she was entitled to only one-ninth of that property. The declaration also stated that Carolyn and Mason filed a cross-complaint seeking an accounting from Charleston (even though the Properties were largely occupied by family members who paid no rent), and that their failure to pursue that cross-complaint impeded the resolution of the partition action. Additionally, Mason's counsel engaged in a pattern of bombarding the referee with "all sorts of critical emails" and filing "specious objections to nearly every motion or effort to move this case along."

The Partition Referee also noted Mason's counsel never recorded anything to demonstrate that Carolyn's estate had an interest in the Properties. Thus, when it came time to quiet title in the Properties, the title insurance underwriters insisted that title be vested in Carolyn's intestate beneficiaries and not the estate. The referee therefore submitted a proposed distribution order that was consistent with the fractional ownership interests set forth in the 2023 Quiet Title Orders, including Mason's 4/108th share in the Properties and the 2/108th share belonging to each of Carolyn's sons.

Mason opposed the Partition Referee's motion to confirm the sale of the Properties.

In December 2024, the court issued an order (the "December 2024 Distribution Order") confirming the sale of the Properties, ordering payment of the Partition Referee fees and Charleston's counsel's attorney fees from the

sale proceeds, and setting forth the distribution of the sale proceeds to the 21 owners of the Properties in accordance with the 2023 Quiet Title Orders. The court additionally ordered that $20,000 be subtracted from Mason's share of the sale proceeds due to the fact that he and Carolyn (while she was still living) unreasonably demanded a greater share of the sale proceeds than they were entitled to and unnecessarily prolonged the partition proceedings.

Following the issuance of the December 2024 Distribution Order, Carolyn's sons filed claims of right to possession of the Peralta property, where they still resided. After the partition court denied these claims, the Partition Referee obtained a writ of possession for the Peralta property and evicted the residents.

The Partition Referee closed the sales of the other three properties and distributed the sale proceeds in accordance with the December 2024 Distribution Order. However, the referee reported that Carolyn's family members did not receive their shares of the sale proceeds because they refused to provide their social security numbers to the title company (which was required for tax reporting purposes). These proceeds were therefore held by the title company pending a further order from the partition court.

In April 2025, the Partition Referee filed a "Motion for Order re: Peralta Sale Proceeds" in which he requested a "comprehensive" order to resolve all the remaining " 'housekeeping' " details of the partition action such that a final judgment could be entered. Among other things, the referee indicated the Peralta property had been cleaned out and was finally ready for sale, and he requested the cleaning costs be equitably reallocated to the property's former occupants. The referee also asked that the sale proceeds otherwise payable to Carolyn's family members be paid into the California Unclaimed Property Fund if the members refused to provide the title

company with the necessary information before the sale closed on the Peralta property.

The day before the referee filed this motion, Mason filed a petition in Carolyn's probate proceeding to determine a claim to property under Probate Code section 850 (the "Section 850 Proceeding"). Mason claimed the title company had refused to deliver any of the sale proceeds from the Properties to Mason as the administrator of Carolyn's estate. He further asserted the estate's share of the sale proceeds was approximately $50,000, which he claimed should be doubled to $100,000 because the title company had acted in bad faith.

On July 2, 2025, the Partition Referee filed an ex parte motion in the partition court to abate the Section 850 Proceeding in the probate court, contending the partition court had exclusive concurrent jurisdiction over matters relating to the partition action. Explaining the partition action had already determined that Carolyn's estate had no ownership interest in the Properties, the motion highlighted the January 2023 Interlocutory Judgment expressly stating that with the passing of several of Charleston's siblings, the "descendants in interest" were now cotenants of the Properties. The referee also noted that, consistent with the language of the January 2023 Interlocutory Judgment, the December 2024 Distribution Order did not provide for a distribution of the sale proceeds to Carolyn's estate. The referee viewed Mason's Section 850 Proceeding as a "transparent effort by the Estate to relitigate its claim to a share of the sale proceeds in a different forum," even though the partition court had already rejected that claim. The referee also sought an award of fees against Mason for the time he had to spend responding to Mason's "specious" claim.

The Partition Referee's ex parte motion indicated it was scheduled to be heard on July 15, 2025. On July 3, 2025, the day after the ex parte motion was filed, the partition court gave notice that a hearing on the matter was set for July 29, 2025. Notwithstanding this fact, that same day (i.e., July 3, 2025), the partition court issued an order abating the Section 850 Proceeding.

In the abatement order, the partition court stated it had already determined how the proceeds of the sales would be distributed and further indicated that no portion of the title to the Properties had vested in Carolyn's estate. The court noted the estate had not objected to these orders but was now asking the probate court to determine the estate's share of sale proceeds through the Section 850 Proceeding. The court concluded that if the Section 850 Proceeding were not abated, there would be a risk the probate court would issue rulings that conflicted with the existing rulings in the partition action. The partition court therefore abated the Section 850 Proceeding, requested that the probate court honor its abatement order, enjoined Carolyn's estate from commencing any other proceedings involving claims that should be adjudicated by the partition court, and awarded referee fees of $12,500 from the sale proceeds that would otherwise have been payable to Mason. In a separate attachment to the abatement order, the partition court ordered Mason's counsel to show cause why he should not be sanctioned and ordered to pay any legal fees incurred by the title company in the Section 850 Proceeding, and why he should not be sanctioned $3,000 for his efforts to "willfully circumvent" the court's order. The court ordered Mason's counsel to respond to the order to show cause by July 18, 2025.

Following the issuance of the abatement order, the Partition Referee filed a reply in support of his ex parte motion on July 9, 2025—anomalously, two days before Mason filed his opposition to the ex parte motion.

9

On July 15, 2025, Mason's counsel filed a declaration regarding the partition court's order to show cause, asserting he did not have an opportunity to be heard before the court issued its July 3 abatement order, nearly two weeks before the moving papers' noticed hearing date of July 15.

One month later, Mason appealed the abatement order.

## DISCUSSION

Mason asserts the abatement order should be reversed for a number of reasons: the partition court issued it without providing him with an opportunity to be heard; the order "usurped" the authority of the presiding judge to determine if the Section 850 Proceeding and partition action were related under California Rules of Court, rule 3.300; the order erroneously ruled that Carolyn's estate had no interest in the sale proceeds of the Properties; and the order erroneously sanctioned him, among other things.

In response, the Partition Referee contends the abatement order was properly decided but also asserts as a preliminary matter that we lack jurisdiction to hear this appeal because it was taken from a nonappealable order.[5] The Partition Referee is correct that the abatement order is not appealable.

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 (*Griset*).) With some exceptions not pertinent here, "appealable judgments and orders are listed in Code of Civil Procedure section 904.1." (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.)

Mason's notice of appeal states only that the appeal is being taken from an order made after a judgment under Code of Civil Procedure section 904.1,

---

[5] Charleston did not respond to this appeal.

10

subdivision (a)(2).[6]  His opening brief, however, recites several other purported bases for appealability under that statute.  We address each of these bases in turn.

### *Appeal From a Judgment (§ 904.1, subd. (a)(1))*

Mason first asserts his appeal is authorized under section 904.1, subdivision (a)(1), which permits an appeal from a judgment.  We disagree.

Under the "one final judgment rule," an appeal may only be taken from the final judgment in an entire action.  (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756.)  "A judgment is the final determination of the rights of the parties in an action or proceeding."  (Code Civ. Proc., § 577; see also *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 (*Sullivan*) [judgment is final " ' "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined" ' "].)  Thus, when a judgment "fails to complete the disposition of all the causes of action between the parties," an appeal cannot be taken.  (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743.)  This rule aims to prevent " 'piecemeal disposition and multiple appeals in a single action' " which can be " 'oppressive and costly.' "  (*Griset, supra*, 25 Cal.4th at p. 697.)

Here, the abatement order was not a final judgment in the partition action.  It neither adjudicated any issues in the action nor rendered any determination of the rights of the parties.  Rather, the order merely abates the separate, overlapping claim Mason filed in Carolyn's probate proceeding.  Additionally, the abatement order makes abundantly clear that the partition action is still ongoing because:  only three of the four Properties have been

---

[6]     All undesignated statutory references are to the Code of Civil Procedure.

sold; escrow has not yet closed on the Peralta property; and the forthcoming sale proceeds from the Peralta property have not been distributed. The Partition Referee also notes in his response brief outstanding issues relating to the fees of counsel and the referee, as well as issues relating to the final distribution of the sale proceeds. As such, the abatement order plainly did not terminate the litigation between the parties. (See *Sullivan*, *supra*, 15 Cal.4th at p. 304.)

Mason nonetheless argues the abatement order "did much more" than abate the Section 850 Proceeding, as it rendered a final determination that Carolyn's estate had no interest in the Properties that were being partitioned. This assertion, however, is belied by the record, which discloses the partition court was ordering abatement of the probate proceeding based on multiple previous orders that had already determined Carolyn's sons and Mason—and not the estate as a whole—were the holders of interest in the Properties. This fact is reflected in the 2023 Quiet Title Orders, which enumerated Mason's 4/108th interest in the Properties as Carolyn's "surviving husband" and which further specified that each of Carolyn's sons would receive a 2/108th interest. This same breakdown of ownership interests is reflected in the December 2024 Distribution Order which, again, separately lists the share of the sale proceeds that Mason would receive as compared to the shares Carolyn's sons would receive. None of these orders provided that Carolyn's estate would receive a one-ninth interest in the Properties.

As such, we disagree with Mason's characterization of the abatement order as determining that Carolyn's estate had no interest in the Properties.

12

***Appeal From an Order After Judgment (§ 904.1, subd. (a)(2))***

Mason additionally contends the abatement order is appealable under section 904.1, subdivision (a)(2) (the subdivision referenced in his notice of appeal). This argument is not well taken. Section 904.1, subdivision (a)(2) authorizes an appeal from an order made after a judgment made appealable by subdivision (a)(1). But, as previously discussed, there has been no final judgment in the partition proceeding. Thus, Mason's appeal of the abatement order does not fall within the purview of this provision.

***Appeal From an Interlocutory Judgment in a Partition Action (§ 904.1, subd. (a)(9))***

Mason next argues the abatement order is appealable under section 904.1, subdivision (a)(9), which permits an appeal of an "interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made." We disagree the abatement order can be characterized as such. As the record reflects, the partition court already entered an interlocutory judgment in this matter in January 2023, which Mason did not appeal. The court also entered the 2023 Quiet Title Orders and December 2024 Distribution Order, which determined the respective interests of each fractional owner of the Properties and which also were not appealed. As the abatement order merely recited the partition court's previous determinations, it falls short of providing a basis for appeal.

***Appeal From an Interlocutory Judgment Directing the Payment of Monetary Sanctions Exceeding $5,000 (§ 904.1, subd. (a)(11))***

Lastly, Mason argues the abatement order's equitable reallocation of $12,500 in referee fees from Mason's portion of the sale proceeds constituted a monetary sanction. As such, he contends the order was appealable under section 904.1, subdivision (a)(11), which authorizes an appeal from an

13

interlocutory judgment that directs a payment of monetary sanctions that exceeds $5,000. We are not persuaded.

Though there appears no case authority directly on point, *Glickman v. Krolikowski* (2025) 109 Cal.App.5th 527 (*Glickman*)—a case addressing the appealability of an order awarding discovery referee fees—provides helpful guidance. In *Glickman*, the parties stipulated to appoint a discovery referee in an agreement that referenced section 645.1, subdivision (b), which provides for the payment of referee fees " 'in any manner determined by the court to be fair and reasonable, including an apportionment of the fees among the parties.' " (*Glickman*, at p. 530.) The discovery referee later granted the respondent's motion to apportion the entirety of the $22,750 in discovery referee fees to the appellants based on the appellants' conduct during discovery. (*Ibid.*) The appellants argued the order was appealable under section 904.1, subdivision (a)(12),[7] which authorizes an appeal from an order directing the payment of monetary sanctions in an amount greater than $5,000. (*Glickman*, at p. 531.) The Court of Appeal disagreed.

*Glickman* held that "[a]n order allocating discovery referee fees is not a sanctions order, even if the referee fees are allocated based on the referee's perception that appellants caused the discovery disputes by providing inadequate discovery responses." (*Glickman*, *supra*, 109 Cal.App.5th at p. 531.) In so concluding, *Glickman* observed that "[c]ourts may impose monetary sanctions only when authorized by statute or rule of court." (*Ibid.*) There, the referee did not use the word "sanctions" in his recommendation and did not rely on any legal authority to impose sanctions; instead, the

---

7       Section 904.1, subdivision (a)(12) authorizes an appeal from an "order"—not an interlocutory judgment as in subdivision (a)(11)—that directs the payment of monetary sanctions in an amount exceeding $5,000. This distinction, however, does not affect the substance of our analysis.

referee relied on his discretion to recommend apportionment of fees as provided in the trial court's reference order. (*Ibid.*) *Glickman* ultimately concluded that section 904.1, subdivision (a)(12)'s reference to " 'monetary sanctions' " does not "include unequally apportioned discovery referee fees, when those fees are apportioned based on the referee's view of the reasonableness of the parties' conduct in causing those referee's expenses to be incurred." (*Ibid.*)

*Glickman*'s reasoning applies with equal force in this case. Here, as in *Glickman*, the partition court did not characterize its apportionment of referee fees as a sanction, nor did it cite any legal authority relative to its award. Rather, the court's order stated it would award a sum of $12,500 to the Partition Referee, and that this amount would be "equitably reallocated from the sale proceeds that would otherwise have been paid to [Mason] . . . pursuant to a Distribution Order of this Court." Notably, this stands in sharp contrast to a separate and distinct provision in the abatement order— which is not at issue in this appeal—that explicitly ordered Mason's counsel to show cause why he should not be "sanctioned" and ordered to pay the legal fees incurred by the title company in connection with the Section 850 Proceeding, and why he should not be "sanctioned" in the amount of $3,000 for his efforts to willfully circumvent the order of the partition court.

More to the point, the award of referee fees was made pursuant to statutory authority similar to that in *Glickman*. As indicated, the parties' stipulation in *Glickman* referenced a statute providing for the payment of referee fees "in any manner determined by the court to be fair and reasonable, including an apportionment of the fees among the parties." (*Glickman*, *supra*, 109 Cal.App.5th at p. 530.) In this case, section 874.010, subdivision (b), provides the costs of partition include the "fee and expenses of

15

the referee," and section 874.040 authorizes a court to "apportion the costs of partition among the parties in proportion to their interests *or make such other apportionment as may be equitable*." (Italics added.)

Here, Mason's filing of the Section 850 Proceeding in the probate court led the Partition Referee to file an ex parte motion to abate that proceeding to head off the potential issuance of conflicting orders by the probate court. As the ex parte motion reasonably sought to maintain the integrity of the partition proceedings, the referee's fees in this endeavor fell comfortably within "the costs of partition" that warranted their equitable apportionment to Mason as the party who caused the referee to incur those fees. (See §§ 874.010, subd. (b), 874.040.) As in *Glickman*, the statutorily authorized equitable allocation was not tantamount to an award of monetary sanctions.

In sum, we conclude Mason's appeal was not taken from an appealable order. Nor has Mason offered any basis for treating this appeal as a petition for writ of mandate.[8] To be sure, Mason may yet raise legitimate challenges to the abatement order.[9] (§ 906 [reviewing court may review any intermediate ruling, proceeding, order or decision upon appeal from final judgment or other appealable order]; *In re Joann E.* (2002) 104 Cal.App.4th

---

[8]     Mason belatedly argues for the first time in his reply brief that a reviewing court has the authority to treat a notice of appeal as a petition for writ of mandate. He does not, however, offer any meaningful legal analysis on the point and provides no reasoned argument for why we should exercise our discretion in this instance. As such, we deem this argument waived. (See *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [deeming undeveloped arguments waived].)

[9]     In this regard, it appears troubling that the partition court issued its July 3 abatement order one day after the ex parte motion was filed and before Mason had a chance to oppose the motion, even though the motion had a noticed hearing date of July 15, 2025.

16

347, 353, [same].)  Nonetheless, any such issues must await an appeal from a final judgment in the partition action.

## DISPOSITION

The appeal is dismissed.  We express no opinion on the merits of the abatement order.  The Partition Referee is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


_____
Fujisaki, J.


WE CONCUR:


_____
Tucher, P. J.

_____
Petrou, J.


*McGuire v. Mason* (A174383)

17